NIMMONS, Judge.
The claimant appeals from an order denying her workers’ compensation claim in which she sought, among other things, temporary compensation benefits and further medical treatment. The deputy denied the claim, finding that the claimant had sustained no injury. We affirm.
The claimant, age 25, began working with Florida Ordnance Corporation in January 1981. Her work involved cutting 120-pound slabs of glass into six 20-pound pieces, sanding the pieces and packing them for shipping. Her job involved lifting the 20-pound pieces. After five to seven months, claimant began to experience soreness in her ankles. The pain gradually moved up her legs into her back and shoulders. The claimant initiated a request that her employer send her to a doctor. Over the next several months, the claimant was seen by several physicians. After being seen by the second physician, who opined that this relatively small (5' 5", 100 pound) lady was not physically suited to do this kind of work, the claimant was given a two-week vacation on July 20, 1982, and then discharged. The claimant said that she was unable to work for five months thereafter because of her soreness. During that time, she was seen by various doctors whose depositions, by stipulation, were received in evidence at the hearing.
In his order denying benefits, the deputy concluded that the repetitive lifting by the claimant would support compensation for an injury under the “repetitive minor trauma” rule but found from the evidence that the claimant had not sustained an injury. We find that there was competent substantial evidence to support that finding.
Dr. Perry, a podiatrist, testified that the claimant’s foot and ankle complaints resulted from congenital displaced tendons in her ankles and that such was aggravated by the lifting at work. However, the deputy rejected Dr. Perry’s testimony in favor of conflicting testimony of other physicians.
The claimant was also examined by Dr. Hoover (an orthopedic surgeon), Dr. Burger (a neurologist) and Dr. Ross (an internist specializing in rheumatology). According to those physicians, there was no identifiable injury sustained by the claimant. Dr. Ross testified, among other things, that there was no evidence of joint inflammation and that the claimant’s feet and ankles showed no abnormality. Laboratory testing showed normal chemistry profile and muscle enzymes. X-rays of claimant’s spine were normal. Dr. Ross said that his initial impression of myalgias (muscle aches and pains) with possible myositis (muscle inflammation) was not confirmed by examination. Rheumatoid and myositis tests were negative. Although Dr. Ross thought that the claimant’s pains were work-related, he said that was only a guess. He also said that he did not know whether the claimant’s work was too much for her.
Dr. Hoover testified that the claimant complained of pressure in her back and *855 discomfort in both legs. He said that, after examining the claimant, he was unable to explain her symptoms, that he “could not medically justify association with a workers’ compensation injury based on her symptoms,” and that there was no condition to treat.
The claimant points to Dr. Berger’s statement that “it sounds as if she might have had some generalized myalgias secondary to the physical stresses of the job that she did last year.” However, that was what he said in his written report. Subsequently, he testified on deposition that her neurological examination was normal, that there was no “condition” to diagnose, and that there was no evidence of an injury.
The record supports the deputy’s finding that the claimant suffered no injury.
AFFIRMED.
WENTWORTH and ZEHMER, JJ., concur.